UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DEBORAH JEAN KUDLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18 CV 419 |
| | ) | |
| CITY OF HAMMOND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment.
(DE # 64.) For the reasons that follow, defendants' motion will be granted in part and
denied in part.

## I.    BACKGROUND[1]

On November 9, 2016, plaintiff Deborah Kudla was arrested and transported to
the Hammond City Jail ("the Jail"). (DE # 66-2 at 2-3.) Upon arrival at the Jail,
defendants Officer Gregory McGing, Officer David Hornyak, and Corporal John
Riordan escorted Kudla from the police vehicle to a cell. (*Id.* at 3.) McGing walked
behind Kudla with his hands on her handcuffs as they entered the cell. (*Id.*; DE # 66-6 at
8.) Hornyak and Riordan followed McGing into the cell. (DE # 66-2 at 3; DE # 66-6 at 2.)
Defendants Corporal Denise Szany, civilian employee Dana Jeffries, Sergeant William
Reshkin, and Sergeant Eric Dimos were present within or just outside the cell. (DE # 66-

---

[1] The following facts are undisputed for purposes of defendants' motion, unless
otherwise noted.

5 at 3; DE # 72-7 at 8; 72-13 at 10; DE # 72-12 at 9.) As McGing walked Kudla into the cell, Kudla screamed, "Get off me!" (DE # 66-6 at 2.)

The parties' accounts diverge with regard to the events leading to Kudla's fall. According to McGing, Kudla "mule-kicked" him in the groin. (*Id.*) He claims that he placed his hand on her bicep in an attempt to pin her against the wall, and while he attempted to pin her to the wall, she slipped and fell to the ground. (*Id.* at 3.) According to Kudla, McGing intentionally, and without provocation, took her to the ground, where she hit the concrete floor head-first. (DE # 75 at 3.)

Upon her fall, Kudla was rendered unconscious. (Ex. 5-B; Ex. 6-A.) Immediately after her fall, the officers: searched Kudla, tried to sit her up, shook her and determined that she was unresponsive, removed her handcuffs, removed her glasses, checked her pulse, rolled her over onto her back, performed a sternum rub, confirmed that she was breathing, and called an ambulance. (*Id.*) The officers observed her until emergency medical personnel from the Hammond Fire Department (HFD) arrived, eight minutes after her fall. (Ex. 6-A.) The HFD transported Kudla to a hospital two blocks from the Jail. (DE # 72-16 at 8; DE # 83-1 at 34.)

The camera in the cell where Kudla fell was operational on the night in question; however, the DVR for that camera was not functioning. (DE # 66-9 at 2.) Therefore, the camera footage was not recorded. (*Id.*)

Defendant Captain Patrick McKechnie was responsible for the operation of the Jail on November 9, 2016. (DE # 72-14 at 2-3.) McKechnie oversaw Jail operations and

was a policymaker for the Jail during the relevant period of time. (*Id.* at 3.) Defendant Chief John Doughty was the Chief of the Hammond Police Department (HPD) on November 9, 2016. (DE # 72-1 at 2.) Doughty was the policymaker for the relevant use of force policy in effect on November 9, 2016. (*Id.* at 3.)

The Jail does not employ any medical staff. (DE # 72-15 at 10.) Correctional officers at the Jail have training in basic first aid, CPR, AD use, and suicide prevention. (*Id.*) The HPD has two express policies addressing the provision of medical care. The HPD Use of Force Policy states: "Officers are required to ensure that medical treatment is provided to any person who needs or requests medical attention as a result of an injury sustained during the course of an arrest where force was used." (DE # 66-7 at 20.) The HPD also has a policy stating, in relevant part: "If a suspect/inmate is brought to the jail or is already in jail custody and is in need of medical attention an ambulance shall be called to determine if the person needs further treatment." (DE # 66-9 at 7.)

The State of Indiana filed criminal charges against Kudla under cause number 45G01-1611-F6-000241 for battery on law enforcement, arising out of the incident with McGing. (DE # 66-7 at 38; DE # 72-4).

Kudla subsequently filed the present suit.[2] Kudla's claims under 42 U.S.C. § 1983 are as follows: Count I - excessive force, against McGing; Count II - failure to intervene, against Reshkin, Szany, Riordan, Hornyak, Jeffries, and Dimos; Count III - conspiracy,

_____

[2] Several of Kudla's claims were resolved in this court's Opinion and Order on defendants' motion for partial judgment on the pleadings. (DE # 39.)

3

against all individually named defendants; and Count IV - denial of medical care, against all individually named defendants. (DE # 1.) Kudla also alleges that defendant City of Hammond ("the City") is liable for the violations of her constitutional rights under *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978), and claims that defendants Doughty and McKechnie are individually liable for their policy choice not to employ medical staff at the Jail. (DE # 75 at 10-15.) In Count IX, Kudla alleges a state law claim for *respondeat superior* against the City. (*Id.*)

Defendants now move for summary judgment on all of Kudla's remaining claims. (DE # 64.) This matter is fully briefed and is ripe for ruling.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict

4

for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

## III.   DISCUSSION

### A.   *Excessive Force*

Defendants move for summary judgment on Kudla's claim that McGing utilized excessive force against her. The use of force against a suspect is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Smith v. Finkley,* 10 F.4th 725 (7th Cir. 2021). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). A court must evaluate whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting that officer. *Graham*, 490 U.S. at 396.

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id.* "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "[S]ince the *Graham* reasonableness inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (internal quotations and citations omitted). "In other words, we cannot determine whether [an officer] used greater force than was reasonably necessary . . . until a fact finder resolves how much force he used and what level of force he needed to use[.]" *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021).

In this case, the parties genuinely dispute precisely these questions of how much force was used and what level of force was reasonable under the circumstances. Defendants have failed to demonstrate the absence of any genuine issue of material fact with regard to Kudla's excessive force claim. Contrary to defendants' assertions, the video evidence does not conclusively establish what happened between Kudla and McGing in the seconds preceding her fall. A reasonable juror could determine any number of things from the video evidence, including that Kudla did not mule-kick McGing, and that McGing deliberately brought Kudla head-first into the concrete floor.

6

As the Court in *Gupta* found, "the video is far from conclusive and reasonable jurors could certainly disagree about what it reveals about the events of the night." *Gupta*, 19 F.4th at 998. In light of the factual disputes surrounding the incident, and the lack of definitive evidence establishing what occurred, defendants are not entitled to summary judgment as to Count I.

> B.     *Failure to Intervene*

Defendants argue that they are entitled to summary judgment on plaintiff's failure to intervene claim. A bystander officer may be held liable under § 1983 if the plaintiff can establish that the officer: "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Abdullahi*, 423 F.3d at 774 (cleaned up).

Kudla argues that Hornyak, Riordan, Szany, Reshkin, Dimos, and Jeffries are liable for failure to intervene because they did not tell McGing to stop, did not physically intervene, and/or did not attempt to prevent Kudla from striking her head. (DE # 75 at 6.) Yet, the incident between Kudla and McGing lasted approximately three

seconds. (*See* Ex. 6-A.) No reasonable jury could possibly conclude that the defendants had sufficient time to intervene in McGing's alleged act of excessive force. *See e.g. Lewis*, 581 F.3d at 472 (jail guard could not be liable for failure to intervene in tasing of inmate where guard had no realistic opportunity to prevent fellow guard from discharging taser gun). Furthermore, Kudla does not argue (and there is no evidence to suggest) that these defendants had any reason to believe that McGing would use excessive force on Kudla before the incident occurred. (*Id.* at 5.) Accordingly, defendants are entitled to summary judgment on Count II.

C.      *Conspiracy*

Plaintiff argues that the defendants conspired to ensure that Kudla was charged with battery against McGing in order to justify what happened to Kudla in the cell. (DE # 75 at 10.) "To prevail on a conspiracy claim, 'the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). "Although a conspiracy certainly may be established by circumstantial evidence . . . such evidence cannot be speculative." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). "Summary judgment should not be granted if there is evidence from which a reasonable jury could infer the existence of a conspiracy." *Beaman v. Freesmeyer*, 776 F.3d 500, 510–11 (7th Cir. 2015).

Defendants have not met their burden of establishing the absence of any genuine issue of material fact with regard to Kudla's conspiracy claim. As discussed above, there is a question of fact as to McGing's use of force, the underlying constitutional violation. If a jury were to credit Kudla's version of events, the other officers' statements that they saw Kudla kick McGing is sufficient to raise a reasonable inference of an agreement between the defendants to falsely accuse Kudla of battery, satisfying both elements of a conspiracy claim. Accordingly, in light of the existing questions of fact surrounding the underlying incident between Kudla and McGing, defendants are not entitled to summary judgment on Kudla's conspiracy claim, Count III.[3] *See Williams v. City of Chicago*, No. 08 C 6409, 2011 WL 133011, at *1 (N.D. Ill. Jan. 14, 2011) (if jury found plaintiff's version of incident credible, there could be reasonable inference of agreement between officers to manufacture false version of events and false criminal charge in order to conceal true events); *Aponte v. City of Chicago*, No. 08 C 6893, 2010 WL 2774095, at *7 (N.D. Ill. July 14, 2010) (same).

D.    *Medical Care*

Defendants next move for summary judgment on plaintiff's claim that defendants were indifferent to her medical needs. As an initial matter, both parties assess Kudla's medical care claim under the Due Process Clause of the Fourteenth

---

[3] Defendants argue in their reply brief that Kudla's conspiracy claim is barred by the intra-corporate conspiracy doctrine. (DE # 84 at 13.) However, arguments not mentioned until a reply brief are waived. *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 n. 42 (7th Cir. 2020), *reh'g denied* (Jan. 7, 2021). Accordingly, the court will not address this argument at this time.

Amendment, and apply the deliberate indifference standard that governs Eighth Amendment claims.[4] This is incorrect. The incident in this case occurred prior to a probable cause determination (*Gerstein* hearing). The governing standard for a claim of inadequate medical care prior to a probable cause determination is the Fourth Amendment's reasonableness standard. *Pulera*, 966 F.3d at 549*; Est. of Perry v. Wenzel*, 872 F.3d 439, 453 (7th Cir. 2017). Accordingly, to succeed on her claim, Kudla must ultimately demonstrate that the officers' actions were " 'objectively unreasonable under the circumstances,' a less demanding standard than the Eighth Amendment's deliberate indifference standard." *Id.* (internal citation omitted).

When determining whether the medical care provided by defendants comported with the "objectively reasonable" requirement of the Fourth Amendment, the court is guided by four factors: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Furthermore, Kudla must show that defendants' conduct caused the harm of which she complains. *Id.*

"'The Fourth Amendment requires reasonableness, not immediacy.'" *Pulera*, 966 F.3d at 555 (quoting *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010)).

---

[4] The Seventh Circuit no longer applies the deliberate indifference standard in the context of Fourteenth Amendment claims relating to the conditions of pretrial detention. *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1509 (2021); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

Even where the officers could have acted faster, "the Constitution does not demand perfection." *Id.* (officers' response to arrestee's attempted suicide was reasonable where officers waited a few seconds for back-up before entering cell to cut arrestee down, officers had pressure off arrestee's neck in two minutes and summoned ambulance less than five minutes). Furthermore, "the Fourth Amendment reasonableness inquiry necessarily takes into account the sufficiency of the steps that officers did take." *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 600–01 (7th Cir. 2011). The Fourth Amendment does not require a law enforcement officer to provide what hindsight reveals to be the most effective medical care to an arrestee. *Id.*

Promptly calling an ambulance after being notified of an arrestee's medical need "will typically qualify as reasonable." *Id.* (citing *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) ("[A] police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR.")); *see also Sallenger*, 630 F.3d at 503–04 (officers' actions not objectively unreasonable where, soon after realizing arrestee was unconscious and not breathing, officers removed restraint, began CPR, and summoned an ambulance); *Dukes v. Freeport Health Network Mem'l Hosp.*, No. 3:19-CV-50189, 2022 WL 1085208, at *17 (N.D. Ill. Apr. 11, 2022) (officer's response to arrestee's medical need was not objectively unreasonable where officer called for an ambulance immediately); *Seay v. City of Indianapolis*, No. 118CV00161TWPDLP, 2020 WL 6710799, at *8 (S.D. Ind. Nov. 16, 2020) (officers entitled to summary judgment on

11

medical care claim where officers promptly called ambulance and did not interfere with medical treatment being provided); *Flerlage v. Vill. of Oswego*, No. 13-CV-6024, 2017 WL 5903819, at *10 (N.D. Ill. Nov. 30, 2017) (same).

In this case, the defendants' actions were not objectively unreasonable under the circumstances. The video evidence demonstrates that after it was apparent that Kudla was unconscious, the defendants checked her breathing and her pulse, observed her, called for an ambulance, performed a sternum rub to try to get a response, removed her handcuffs and glasses. Eight minutes later emergency medical personnel arrived in the cell to provide medical treatment.

In support for her argument that defendants were indifferent to her medical needs Kudla asserts that unknown defendants kicked her leg and picked her head up by her hair. (DE # 75 at 7.) Neither of these allegations are supported by the evidence.

Kudla argues that defendants did not do enough to assist her; however, she has not identified what additional medical care she believes defendants, who are not medical professionals, should have provided. In light of the collective actions by defendants, who promptly called for medical assistance and monitored Kudla's condition, no jury could find that defendants' actions were objectively unreasonable. Accordingly, defendants are entitled to summary judgment on Count VI.

     E.    *Claims against Doughty and McKechnie*

Kudla argues that Doughty and McKechnie are personally liable for policy decisions that resulted in lack of medical care for detainees and arrestees in the Jail.

12

Kudla specifically argues that these defendants are personally liable for their policy decision not to employ medical staff at the Jail. (DE # 75 at 10-15.)

A senior jail official, including a person with final policymaking power, may be personally liable for failing to enforce a policy critical to ensuring inmate health and safety if he is aware of a systemic lapse in enforcement of that policy. *Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016). However, there can only be liability where a policymaker's actions caused harm. In this case, there is no evidence that Kudla was denied constitutionally adequate medical attention, and therefore no basis for liability against McKechnie or Doughty. Kudla received medical care eight minutes after her fall. She has not identified how the absence of medical personnel within the Jail caused her any constitutional harm. Accordingly, defendants are entitled to summary judgment on this claim.

F.      *Qualified Immunity*

Defendants argue that, in the event this court determines that there are questions of fact as to any of Kudla's federal claims, defendants are nevertheless entitled to summary judgment on the basis of qualified immunity. (DE # 65 at 18.) "The doctrine of qualified immunity protects government officials from liability for civil damages in situations in which their conduct does not violate a clearly established statutory or constitutional right." *Gupta*, 19 F.4th at 1000. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S.

335, 341 (1986). The Supreme Court holds that if no constitutional right was violated, there is no necessity for further inquiries. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

If a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id.* "A constitutional right is 'clearly established' for qualified-immunity purposes where [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 731 (7th Cir. 2013). "A case holding that the exact action in question is unlawful is not necessary." *Alicea v. Thomas,* 815 F.3d 283, 291 (7th Cir. 2016). In order to be "clearly established, there need not be a case directly on point but existing precedent must make the question beyond debate. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna,* 142 S. Ct. 4, 7, 211 L. Ed. 2d 164 (2021) (cleaned up).

Here, the evaluation of qualified immunity on Kudla's remaining federal claims (excessive force and conspiracy) requires the same assessment of the material facts in dispute on the substantive claims. *See Gupta*, 19 F.4th at 1001. In light of these disputes, the question of qualified immunity cannot be determined at this time.

G. Monell *Claims*

Defendants also seek summary judgment on plaintiff's claims against the City under *Monell*. Plaintiff brings a number of different *Monell* claims. She argues that the

City is directly liable for: (1) maintaining a policy or custom that relies on correctional and civilian employees to determine medical needs for arrestees and detainees, rather than hiring medical personnel; (2) failing to review the incident between Kudla and McGing; and (3) failing to maintain operable cameras throughout the Jail. (DE # 75 at 18-22.) Plaintiff also argues that the City is liable under *Monell* for failing to train its officers to: (1) not utilize excessive force; and (2) provide medical treatment. (*Id.* at 20.)

"Liability under *Monell* is difficult to establish, requiring a § 1983 plaintiff to prove that a municipality, either through an express policy or an implied policy of inaction, took 'deliberate' action that was the 'moving force' behind a constitutional injury." *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022) (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–07 (1997)). A municipality may be liable under *Monell* where: (1) the plaintiff was deprived of a federal right; (2) the deprivation of that right is "properly attributable to the municipality itself" in that some municipal action (i.e. a policy or custom) caused the deprivation; (3) the policy or custom demonstrates municipal fault (i.e. deliberate indifference); and (4) there is a "direct causal link" between the challenged municipal action and the violation of the plaintiff's constitutional rights (i.e. the municipal action was the "moving force" behind the violation). *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). "A municipality can be held liable, even when its officers are not, unless such a finding would create a inconsistent verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010).

Many of Kudla's *Monell* claims are resolved by the lack of connection to any constitutional injury. First, Kudla has failed to cite any evidence from which a causal connection could be drawn between McKechnie and Doughty's failure to investigate what occurred on the night Kudla was injured, and her alleged constitutional injuries. McGing's alleged use of excessive force and defendants' alleged conspiracy to charge Kudla with battery occurred *before* McKechnie and Doughty's alleged failure to investigate, and therefore the failure to investigate this particular incident could not be the moving force behind the alleged constitutional harm.[5]

Second, Kudla has not established how her claim that the City fails to maintain operable cameras directly caused the alleged use of excessive force by McGing, or the alleged conspiracy by the other officer defendants. Kudla argues that the Jail was "running blind in 2016" due to inoperable cameras. (DE # 75 at 21.) Yet, the evidence is that the camera in the cell where Kudla was injured was working, but the DVR was not recording. Kudla cites no evidence to support a reasonable inference that the defendant officers were aware that the recording device was inoperable. Without a reasonable inference that the officers acted the way they did because they were aware that their actions would not be recorded, Kudla cannot tie any constitutional injury to the City's alleged custom or practice of failing to maintain its recording devices.[6] Accordingly,

---

[5] Plaintiff does not argue that a broader practice of failing to investigate contributed to defendants' actions.

[6] Kudla tries to assert a similar claim against McKechnie in his personal capacity as a policymaker. (DE # 75 at 14.) This claim fails for the same reason it fails against the

there is no evidence that this alleged practice was the "moving force" behind Kudla's constitutional injuries.[7]

Kudla's *Monell* claim regarding failure to train its officers in the use of force fails for lack of any evidentiary support. Kudla argues, "[w]ith adequate training, what happened to Ms. Kudla by the hands of Ofc. McGing, driven headfirst into the ground, and what happened to her on the ground, kicking, rolling over, and picking her head up by her hair after a clear injury, should not have happened."[8] (DE # 75 at 20.) This is the sum total of Kudla's argument regarding the City's liability for failure to train its officers in the use of force, and at this stage of the litigation this conclusory allegation falls far short of what is required to proceed to trial. *See Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019) (affirming summary judgment for defendant-

---

City: Kudla has not identified any constitutional harm associated with the failure of the recording device to record the incident in the cell.

[7] This is not an instance where a plaintiff's claims arise from constitutionally inadequate supervision that lead to harm. *Compare Bradford v. City of Chicago*, No. 16 C 1663, 2017 WL 2080391, at *3 (N.D. Ill. May 15, 2017) ("[W]hile the broken camera does not, in itself, support a constitutional claim, it may nevertheless provide support for Plaintiff's broader argument that official indifference to systemic problems with supervision at the Fifth District lockup created unreasonable conditions of confinement leading to Bradford's suicide.") *with Foy v. City of Chicago*, No. 15 C 3720, 2016 WL 2770880, at *10 (N.D. Ill. May 12, 2016) (where officers allegedly ignored pleas to help inmate, there were no facts or allegations to support inference that inoperable surveillance cameras were moving force behind inmate's death because lack of supervision was not the problem). Here, there is no evidence that a lack of supervision caused Kudla's constitutional harm.

[8] As discussed in an earlier section, there is no evidence in the record to support Kudla's allegation that she was kicked and picked up by her hair while she was unconscious.

17

officers where plaintiff failed to point to any evidence in support of claim that city failed to train and supervise officers and that city's failures were moving force behind alleged constitutional violations).

Kudla's remaining *Monell* claims relate to the City's provision of medical care to detainees and arrestees in its custody. She argues that the City has an unconstitutional policy of relying on correctional and civilian employees to determine medical needs for arrestees and detainees, rather than hiring on-site medical personnel, and that the City is liable for failing to train its officers to provide medical treatment. (DE # 75 at 20.)

"*Monell* liability may attach in two limited sets of circumstances. First, if an express municipal policy or 'affirmative municipal action is itself unconstitutional,' a *Monell* plaintiff has a 'straightforward' path to holding the municipality accountable. In such cases, a single instance of a constitutional violation caused by the policy suffices to establish municipal liability." *Taylor*, 26 F.4th at 435 (quoting *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc)).

Here, there is no question that the express policy of the City is constitutional. The express policy at the Jail states: "If a suspect/inmate . . . is in need of medical attention an ambulance shall be called to determine if the person needs further treatment." If a detainee requires treatment, they are taken to the hospital two blocks from the Jail. Kudla has not demonstrated that this policy is unconstitutional. *See e.g. City of Canton, Ohio v. Harris*, 489 U.S. 378, 386–87 (1989) ("There can be little doubt that on its face the city's policy regarding medical treatment for detainees is constitutional. The policy

18

states that the city jailer 'shall . . . have [a person needing medical care] taken to a

hospital for medical treatment, with permission of his supervisor . . ..'"); *Harvey v. Dart*,

No. 19-CV-2996, 2021 WL 4264312, at *8 (N.D. Ill. Sept. 20, 2021) ("[A] policy of

providing dental care off-site is facially constitutional. A policy to provide dental care

off-site expressly provides for medical care. The policy involves where the detainee

receives care, not whether the detainee receives care, or how soon the detainee receives

it.").

"The second path to *Monell* liability runs not through an expressly

unconstitutional policy, but instead through 'gaps in express policies' or through

'widespread practices that are not tethered to a particular written policy'—situations in

which a municipality has knowingly acquiesced in an unconstitutional result of what its

express policies have left unsaid." *Taylor*, 26 F.4th at 435 (citation omitted). If a

municipality's action is not facially unconstitutional, "the plaintiff must demonstrate

that the municipality's action was taken with deliberate indifference to the plaintiff's

constitutional rights. This is a high bar. Negligence or even gross negligence on the part

of the municipality is not enough."[9] *First Midwest Bank Guardian of Est. of LaPorta v. City

of Chicago*, 988 F.3d 978, 987 (7th Cir.), *cert. denied sub nom. First Midwest Bank v. City of*

---

[9] The "deliberate indifference" standard for *Monell* claims does not turn upon the
degree of fault that a plaintiff must show to make out an underlying constitutional
claim. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997); *City
of Canton, Ohio v. Harris*, 489 U.S. 378, 389, n.8 (1989). Accordingly, while the deliberate
indifference standard is inappropriate when applied to Kudla's claims against the
individual defendants, it is properly applied in the context of her *Monell* claims.

*Chicago*, 142 S. Ct. 389 (2021) (cleaned up). Rather, the plaintiff must prove that "it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Id.* (internal citations omitted).

Kudla's claim that the City is liable under *Monell* for failing to have on-site medical staff and failing to provide medical training to its correctional staff fails for two reasons. First, there is no evidence that the City's decision not to hire medical staff was made with deliberate indifference. There is no reasonable inference to be had that it was obvious that the City's failure to have on-site medical staff or medically trained correctional staff would lead to constitutional violations and that the City consciously disregarded those consequences. To the contrary, the only evidence in the record demonstrates that, in relying on emergency medical services, the City was able to provide swift medical care (Kudla was treated within eight minutes of her fall and then transported to a hospital two blocks from the Jail). On this record, no reasonable jury could find that it was obvious that the City's policy would lead to constitutional violations or that the City was deliberately indifferent to that risk.

Second, Kudla has not pointed to any evidence from which an inference could be made that the City's lack of on-site medical staff caused her harm. While a significant delay in medical treatment may support a claim of deliberate indifference, "especially where the result is prolonged and unnecessary pain," *Berry v. Peterman*, 604 F.3d 435,

441 (7th Cir. 2010), here the eight minute wait until EMTs arrived cannot be considered

a significant delay, and Kudla was unconscious for most of that time.

Kudla does not cite, and this court is not aware, of any authority finding that a

short-term holding facility such as the Jail is constitutionally required to have on-site

medical staff. *See e.g. Hunt v. Miller*, No. 2:07-CV-287RM, 2007 WL 2903195, at *4 (N.D.

Ind. Sept. 28, 2007), *amended on reconsideration in part*, No. 2:07-CV-287 RM, 2008 WL

2002258 (N.D. Ind. May 6, 2008) ("[T]hat a small jail has no full time medical staff, by

itself, states no Eighth Amendment claim upon which relief can be granted-though

failure to otherwise provide for inmates' medical care might."); *Vaught v. Quality Corr.*

*Care, LLC*, 323 F. Supp. 3d 997, 1011 (N.D. Ind. 2018) ("[T]here is no evidence from

which it can be inferred that the [jail's] staffing arrangement created a substantial risk of

harm to inmates."); *Newbon v. Milwaukee Police Dep't*, No. 09-C-477, 2011 WL 3844095, at

*6 (E.D. Wis. Aug. 30, 2011) (in light of facility's policy to call for medical attention or

transport detainee to medical facility on request, plaintiff failed to establish that officers'

lack of medical training constituted substantial health risk to detainees); *cf. Petrig v. Folz*,

581 F. Supp. 2d 1013, 1019 (S.D. Ind. 2008) ("[T]he Court concludes that having no

medical staff on-site and available to examine an injured inmate for more than an entire

day, *and failing to immediately transport an inmate*, who was in obvious distress, to a

hospital are suspect practices or policies." (emphasis added)).

For these reasons, the City is entitled to summary judgment on all of Kudla's

*Monell* claims.

H.      *State Law Battery*

Defendants argue that they are entitled to summary judgment on plaintiff's state law battery claim. (DE # 65 at 22.) In response, plaintiff argues that the use of excessive force is not immunized by the Indiana Torts Claims Act (ITCA). (DE # 75 at 23.) Neither party addresses the fact that this court granted defendants' motion for judgment on the pleadings with regard to this claim in 2019. (*See* DE # 39 at 5-6.) To the extent that plaintiff believes her battery claim should have survived defendants' motion for judgment on the pleadings, plaintiff may address the matter by filing the appropriate motion.[10] Accordingly, defendants' motion for summary judgment as to Count V is denied as moot.

Defendants also move for summary judgment on plaintiff's state law claims for negligence and intentional infliction of emotional distress. (DE # 65 at 22.) In response, plaintiff concedes that these state law claims are barred by the ITCA. (DE # 75 at 25.) Once again however, the court granted defendants' motion for judgment on the pleadings with regard to these claims. (DE # 39 at 5-6.) Accordingly, defendants' motion for summary judgment as to Counts VI, VII, and VIII are denied as moot. To the extent that plaintiff's negligence and intentional infliction of emotion distress claims were also

_____

[10] The court notes that both parties appear to be in agreement that McGing is not entitled to ITCA immunity on plaintiff's battery claim – an issue neither party raised during the briefing on the motion for judgment on the pleadings. However, despite the parties' apparent agreement, the issue is not properly before the court and cannot be addressed at this time.

made against the City, summary judgment is granted in light of plaintiff's concession that these claims are entitled to immunity under the ITCA.

*I.*      Respondeat Superior

The City argues that it is entitled to summary judgment on plaintiff's *respondeat superior* claim based on statutory immunity under the ITCA. (DE # 65 at 22.) The law enforcement immunity provision of the ITCA provides that a governmental entity is not liable if a loss results from the adoption and enforcement of, or failure to adopt or enforce, a law, rule, or regulation. Ind. Code § 34-13-3-3(a)(8). The only surviving state law claim on which *respondeat superior* liability might be based is plaintiff's battery claim against McGing.[11] However, the City concedes that law enforcement immunity does not apply to bar claims of battery or excessive force. *See Wilson v. Isaacs*, 929 N.E.2d 200, 204 (Ind. 2010). Accordingly, the City is not entitled to immunity under the ITCA.[12]

---

[11] Plaintiff appears to assert a battery claim against an unknown officer who plaintiff claims kicked her after she fell unconscious. As noted earlier, there is no evidence of this kick. Furthermore, plaintiff's complaint only states a claim of battery against McGing. (*See* DE # 1.)

[12] As it stands, plaintiff is permitted to proceed with a *respondeat superior* claim stemming from McGing's alleged battery, even though the underlying battery claim against McGing has been dismissed. This poses no problems for the viability of plaintiff's *respondeat superior* claim. "There is no requirement that a plaintiff must sue the individual employee in order for an employer to be held liable for the employee's conduct under the theory of *respondeat superior*; an employee only needs to have committed some act within the scope of employment for which he could be sued." *Hogan v. Magnolia Health Sys. 41, LLC*, 161 N.E.3d 365, 370 (Ind. Ct. App. 2020), *transfer denied*, 167 N.E.3d 1154 (Ind. 2021) (plaintiff could proceed with *respondeat superior* claim against employer even though employee whose conduct was at issue was dismissed under statute of limitations defense).

The City also argues that it is entitled to common law immunity. The City relies on the Indiana Supreme Court's finding in *Campbell v. State*, 259 Ind. 55, 62 (1972), *opinion reinstated sub nom. Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind. 1999), that a city is immune under common law for failure to provide adequate police protection to prevent a crime. The City also cites *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1277 (Ind. Ct. App. 2005), where common law immunity barred a claim of failure to prevent the suicide of a detainee. Yet, Kudla's claim is not that McGing failed to provide adequate protection while she was in custody, but that he intentionally committed battery against her. In light of the factual disputes surrounding the incident between McGing and Kudla, the court cannot agree with the City that this is merely a matter of the City's "inability to prevent Kudla from falling and injuring herself in custody[.]" (DE # 65 at 25.) Accordingly, the City is not entitled to summary judgment with respect to Count IX.

24

IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART and DENIES IN PART** defendants' motion for summary judgment (DE # 64), on the terms set forth in this Opinion and Order. A trial date will be set under a separate order. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court hereby **ORDERS** that this case be referred to Magistrate Judge John E. Martin for purposes of holding a settlement conference.

**SO ORDERED.**

Date: June 16, 2022

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT